UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| STEPHEN W. HUDSON, | |
|---|---|
| Plaintiff, | |
| v. | Action No. 3:09-CV-462 |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

MEMORANDUM OPINION

I. INTRODUCTION

THIS MATTER is before the Court on defendant Bank of America's ("BoA") Motion to Dismiss plaintiff Stephen W. Hudson's ("Hudson") Second Amended Complaint. In his Second Amended Complaint, Hudson contends that under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., he is entitled to rescind a mortgage on his primary residence and that he is entitled to statutory damages and equitable relief due to BoA's refusal to recognize this right of rescission. BoA claims that the complaint must be dismissed because Hudson has both failed to plead essential elements of the claim upon which he seeks relief, and has failed to plead facts sufficient to make the existence of other elements plausible.

For the reasons set forth below, BoA's Motion shall be granted and Hudson's Second Amended Complaint shall be dismissed.

1

## II. BACKGROUND

As the matter is before the Court on a motion to dismiss, the Court takes the facts in the light most favorable to Hudson but reserves its own judgment as to the plausibility of any legal conclusions or factual inferences drawn from them. See Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

### A. Facts:

In December 2007, Hudson entered into a credit transaction with Mortgage Source, LLC ("Mortgage Source"), in which he refinanced the mortgage on his primary residence at 4704 Post Land Drive in Chesterfield County, Virginia. This transaction was evidenced by a note signed by Hudson and secured by a deed of trust conveying legal title to trustees for the benefit of Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted as a nominee for Mortgage Source. Mortgage Source imposed certain conditions on Hudson when entering into the credit transaction, among these were requirements that the deed of trust be a first lien on the home and that Hudson obtain title insurance. The cost of the title insurance provided by Mortgage Source was $819 and was listed in disclosure form provided to Hudson prior to the signing of the mortgage agreement. (Complaint, Ex. C.) The TILA Disclosure Statement given to Hudson by Mortgage Source stated that the total amount financed on the loan was $177,362.00 and that the total finance charge was $251,113.90. (Complaint, Ex. F.) In an itemized breakdown of the amount financed, the $819 fee for title insurance is listed. (Complaint, Ex. F.) Hudson contends that the prevailing local market rate for a charge of this kind on a comparable credit transaction was less than $500.

After the settlement of the mortgage, Hudson paid off a prior mortgage on the Post Land Drive property and consolidated other debts. Mortgage Source subsequently assigned the note to Countrywide Bank, FSB ("Countrywide"). Countrywide later merged with BoA. BoA succeeded to the rights and obligations of Countrywide with respect to the transaction. In conjunction with these transfers, Samuel I. White, P.C. ("White"), and Recontrust Company, N.A. ("Recontrust"), were appointed as substitute trustees on the deed of trust. At some point in early 2009, Hudson defaulted on his payment obligations under the mortgage and White and Recontrust advertised the home for a foreclosure sale taking place on May 19, 2009. On May 7, 2009, Hudson, by counsel, mailed to Mortgage Source, Countrywide, and MERS, a written notice of rescission of the credit transaction. Neither Mortgage Source, Countrywide, MERS, nor BoA took any action to reflect the termination of the security interest securing the credit transaction within the 20 days following their receipt of this notice. However, the foreclosure sale was postponed and now appears be on hold pending the outcome of this litigation.

Hudson contends that Mortgage Source was bound by the terms of the TILA when it issued the mortgage to him and that Mortgage Source failed to comply with its TILA disclosure obligations when it failed to list as a finance charge the difference between the $819 charged for title insurance and the prevailing local rate of less $500. Hudson contends that disclosure of this amount was required because the fee for title insurance was unreasonably inflated and that the amount by which such a fee is not reasonable and bona fide must be disclosed under the TILA. Hudson further contends that since the amount omitted from the TILA disclosure exceeded $35, he was entitled to rescind the credit transaction given the pendency of a foreclosure proceeding. Hudson finally contends that BoA has violated the TILA by refusing to recognize his rescission

of the credit transaction in a timely fashion. Hudson avers that if the Court were to recognize his right to rescind the mortgage transaction, order the refund of certain fees paid in conjunction with the transaction, and award him statutory damages, he could potentially tender the funds required to complete rescission by either selling or refinancing his home.

### B. Posture of Claim:

This is Hudson's Second Amended Complaint. The initial complaint was filed, after the approval of Hudson's motion to proceed in forma pauperis, on July 23, 2009. In this initial complaint, MERS and Countrywide were named as defendants. On September 21, 2009, MERS filed a motion to dismiss. On October 6, 2009, Hudson sought a voluntary non-suit against MERS and filed an Amended Complaint which dropped Countrywide as a defendant and added BoA. On January 13, 2010, BoA filed a motion to dismiss and on March 10, 2010, Hudson sought and received the approval of BoA and the Court to further amend his complaint. On March 19, 2010, Hudson filed his Second Amended Complaint, which is now before the Court. BoA filed the instant Motion to Dismiss on April 5, 2010.

In his Second Amended Complaint, Hudson claims that he is entitled to a judgment for $2000 in statutory damages based on BoA's failure to honor the notice of rescission. Hudson also claims that he is entitled to a declaratory judgment that he validly rescinded the credit transaction and that White and Recontrust are not entitled to go forward with the sale of his home. In conjunction with this declaration, Hudson asks the Court to determine the amount due to effect rescission and the extent to which his statutory damages offset this amount. Hudson also asks the Court to exercise its "equitable discretion" to allow him a reasonable time in which

to find refinancing or a purchaser for his home. Finally, Hudson asks the Court to award attorneys' fees to the Central Virginia Legal Aid Society, Inc., for work done on his case.

### III. DISCUSSION

Hudson's Second Amended Complaint is before the Court on a motion to dismiss for failing to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint "considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186 at 192 (4th Cir. 2009). Every complaint must contain at least "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R.Civ.P. 8. While this Rule was long read to require mere "notice" to a defendant, see, e.g., Conley v. Gibson, 355 U.S. 41 (1957), a plaintiff must now state "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." See Francis, 588 F.3d at 193 (citing Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009)). Thus, a pleading must now contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. Evaluating the sufficiency of a complaint now requires a court to parse between allegations of fact and conclusions or inferences drawn from those facts and to ensure that the "naked assertions of wrongdoing" setting forth the elements of a claim are adequately supported by "factual enhancement." See id.

#### A. The Truth In Lending Act

The TILA regulates the relationship between lenders and borrowers in order to facilitate the "informed use of credit". See 15 U.S.C. § 1601(a); Mourning v. Family Pub'ns Serv. Inc., 441 U.S. 356, 377 (1973). To that end, the TILA requires lenders to disclose to borrowers "finance charges", or the costs of borrowing, which consist of "the sum of all charges . . .

5

imposed directly or indirectly by the creditor as an incident to the extension of credit". §§ 1605(a) & 1632(a); see also 12 C.F.R. § 226.17. The TILA specifically defines which charges may be deemed "finance charges", see §§ 1605(a)(1)-(6), and specifically excludes "fees or premiums for title examination, title insurance, or similar purposes" where a credit transaction is secured by an interest in real propery. § 1605(e). However, the applicability of this exemption is conditioned on the title insurance fees being "bona fide and reasonable in amount". 12 C.F.R. § 226.4(c)(7)(i). Although there is a scarcity of cases construing this particular provision, courts construing § 226.49c)(7) have typically given the terms their "plain meaning" and looked to whether the services billed were "rendered in good faith," see e.g., Capparelli v. AmeriFirst Home Imp., 535 F.Supp.2d 554, 562-63 (E.D.N.C. 2008)(discussing cases), whether the fees "indirectly augment[ed] the creditor's yield", or were comparable to "the prevailing practices of the industry in the locality." See, e.g., Grigsby v. Thorp Consumer Discount Co., 119 B.R. 479, 488 (Bankr. E.D.Pa. 1990) vacated on other grounds, 127 B.R. 759 (E.D. Pa. 1991).

The importance of accurately disclosing finance charges is demonstrated by 15 U.S.C. § 1635(i), which provides that, after the initiation of any foreclosure proceeding on a primary dwelling securing the debt of a borrower, the borrower shall have a right to rescind the transaction if "a mortgage broker fee is not included in the finance charge in accordance with the laws and regulation in effect at the time the consumer credit transaction was consummated." § 1635(i)(1)(a). Where a foreclosure is underway, any failure to disclose a finance charge exceeding $35 may be grounds for rescission. § 1635(i)(2). Where a transaction is rescinded, a borrower is not liable for any finance charges or other fees and the creditor must tender its security interest within 20 days. Id. Where a creditor fails to abide by either the disclosure

requirements of § 1631 or the rescission provisions of § 1635, it may be liable for statutory damages ranging from $400 to $4,000, as well as an borrower's attorneys' fees. § 1640(a)(2)(A)(iv). Where a TILA violation is "evident on the face of the disclosure statement", an assignee may also be liable for damages under § 1640. § 1641(a); see also Irby-Greene v. M.O.R., Inc., 79 F.Supp. 2d 630, 631 (E.D.Va. 2000)(denying statutory damages where alleged disclosure violation was not facially evident but allow rescission on separate grounds). The relevant inquiry in such a case is whether "a reasonable person can spot any violation on the face of the disclosure statement or other assigned documents." Irby-Greene, 79 F.Supp. 2d at 634. A borrower's right of rescission is unaffected by the assignment of the mortgage. § 1641(c).

Whether a borrower may unilaterally rescind a transaction or whether he must seek the approval of a court or the consent of the creditor is a central question in this case. The TILA states that a borrower may effect rescission against a creditor by "notifying the creditor . . . of his intention to do so." See § 1635(a). Hudson contends that his rescission of the transaction was thus complete when he gave notice to Mortgage Source, MERS, and Countrywide on May 7, 2009, and that to the extent to which he is seeking statutory damages based on BoA's failure to honor this notice, it is immaterial whether BoA was the original creditor or the assignee. BoA contends that this notice, in which Hudson stated only his intent to rescind but did not offer to tender any funds, cannot be enough to effect a complete rescission. BoA argues that this would allow an obligor with no intent or ability to pay his debts to convert a secured creditor to an unsecured creditor merely by alleging a TILA violation. BoA further argues that this would place assignees in the position of being held liable for failing to honor a notice of rescission, despite the express limitations on assignee liability imposed by § 1641(a).

7

While there is some merit to both arguments, the Fourth Circuit has roundly rejected the former and approved of the later. See Am. Mort. Net., Inc. v. Shelton, 486 F.3d 815, 819-822 (4th Cir. 2007). In Shelton, a borrower sought a determination that his lender's failure to release a security interest within 20 days violated § 1635(b) and that the lender had thereby forfeited any interest in both the property and the financed amount. Id. at 816. The borrower in Shelton sought to exercise his right to rescind a transaction pursuant to the "third business day" provision of § 1635(a) following the disclosure of a $100 error in a TILA disclosure form. Id. at 818. While the creditor was willing to unwind the transaction, the obligor was unable to tender the funds and instead offered to sell the home back to the creditor for the difference between its appraised value and the financed loan amount. Id. In considering the obligor's claims, the Circuit first noted that it is well settled law that § 1635 does not "compel[] a creditor to remove a mortgage lein in the absence of the debtor's tender of the loan proceeds" because this would deprive the creditor of the value of his security interest. Id. at 820 (citing Powers v. Sims & Levin, 542 F.2d 1216 (4th Cir. 1976).) The Circuit went on to adopt what it characterized as the "majority view" of reviewing courts that "a security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined." Id. at 821 (citing Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 54-55 (1st Cir. 2002).) Until such a decision has been made, the borrower has "only advanced a claim seeking rescission." Id. While the Circuit noted that a court could facilitate rescission by allowing a borrower a reasonable period of time to tender funds, such relief was ultimately an equitable remedy to be used at the Court's discretion. Id.

## B. Hudson Has Failed to State a Claim for Rescission

Under Shelton, Hudson, who is seeking TILA rescission of a credit transaction secured by his primary residence, must allege facts which render plausible the conclusion that the TILA mandated disclosures were not made and that he has the ability to tender the proceeds of the loan to his creditor in return for the release of the security interest upon his property. See 486 F.3d at 821. Since the deficiency alleged is an undisclosed finance charge and foreclosure proceedings have begun against the primary residence, Hudson must also show that the undisclosed amount was greater than $35. Since Hudson claims that a portion of a fee for title insurance should have been included as a finance charge because it was not bona fide or reasonable, he must show that the services were not rendered in good faith, that the fees indirectly augmented the yield of the loan, or that they were not comparable to the prevailing practices of the industry in this locality. See Capparelli, 535 F.Supp.2d at 562; Girgsby, 119 B.R. at 488. In making this showing, Hudson must do more than merely restate these essential elements of a TILA claim, he must present sufficient factual matter, accepted as true, to render the legal conclusions and factual inferences supporting these elements plausible. See Francis, 588 F.3d at 193. Hudson has not met his burden.

To begin, Hudson has failed to adequately support his averment that he can tender the funds necessary to complete rescission. Hudson has claimed that if the Court recognizes his right to rescind, he will tender the financed amount after several conditions are met. First, Hudson states that he will need time to seek refinancing or a buyer for his residence. Second, Hudson indicates that he plans to use some or all of the damages awarded in this action to make up the difference between the value of the home and the amount that would be due to BoA. Third, since

Hudson claims ignorance of the number of payments he has already made on the mortgage, Hudson asks this Court to determine the exact amount he will be required to tender. In light of these conditions, Hudson's ability to tender is at best speculative. While the Court has held that a plaintiff need not conclusively establish his ability to tender to survive a motion to dismiss, see Moore v. Wells Fargo Bank, N.A., 597 F.Supp.2d 612, 616 (E.D.Va. 2009), this case has been pending for over a year and Hudson's pleadings makes no mention of either prospective buyers or financiers. Further, Hudson does not appear to be entitled to the statutory damages on which he claims he would to rely. (See infra Section III, C.) Finally, given the context of the case and the Court's judicial experience, the Court cannot reasonably conclude that Hudson will be able to pay the as yet unknown amount due on the loan within a reasonable period of time following the resolution of this matter.

Next, Hudson has also failed to plead facts sufficient to support his claim that the allegedly miscategorized title fee was not bona fide and reasonable and thus not a finance charge. Hudson does not dispute that the title insurance was provided in return for the $819 fee, he merely claims that in the local market title insurance for a comparable transaction could be obtained for less than $500. Even if the Court assumes the veracity of these allegations, these averments merely establish that Hudson paid more for title insurance than another borrower might have. In the absence of any allegations regarding the extent to which Mortgage Source augmented its return through title insurance fees or more comprehensive allegations regarding the prevailing rates for title insurance on properties similar to Hudson's, the Second Amended Complaint merely shows the possibility of wrongdoing but does not nudge the claim from possible to plausible. Since Hudson has not alleged facts sufficient to render his conclusions

regarding the unreasonability of the title insurance fee plausible, his conclusion that the TILA disclosures omitted finance charges exceeding $35 is nothing more than a naked assertion.

### C. Statutory Damages and Attorneys' Fees

In order to state a claim for statutory damages or attorney's fees based on BoA's failure to recognize his right to rescind the mortgage, Hudson must plead facts sufficient to render plausible the conclusion that the TILA disclosure documents were facially invalid or that BoA improperly refused to acknowledge Hudson's right to rescind. To the extent that Hudson ever advanced a claim for statutory damages based on a disclosure deficiency, he abandoned that claim at oral argument by conceding that the $819 title insurance fee was not a self-evident finance charge. Thus, Hudson's Second Amended Complaint must state a claim for damages based on BoA's refusal to tender the security interest within 20 days of receiving his notice of rescission. While it may be possible to state a claim for statutory damages based on creditor or assignee's refusal to rescind a transaction, Hudson's pleadings do not.

As Shelton makes clear, Hudson's notice to BoA that he wished to rescind the mortgage transaction merely advanced a claim seeking rescission, it did not establish his right to rescission. See 486 F.3d at 821. While the Court declines to adopt the broad rule suggested by BoA that an assignee can never be held liable for refusing to recognize a right to rescission, the Court does conclude that under § 1635, an assignee is not obligated to automatically release its security interest in an obligor's property when presented with a mere allegation of a TILA violation and no offer to tender the proceeds of the loan. See 486 F.3d at 821.

Since there was no facially evident violation of the TILA and BoA does not appear to have wrongfully refused to recognize Hudson's claim to rescission, Hudson is not entitled to either statutory damages or attorneys' fees.

*****

In light of the foregoing, the Court holds that Hudson's Second Amended Complaint does not contain the allegations of fact necessary to support the legal conclusion on which his TILA claims rest. While the Court is mindful of the important role that the right of rescission plays in ensuring compliance with disclosure regulations, Hudson has overstated the objectives of the TILA. Congress expressly stated that it intended to facilitate the informed use of credit, see § 1601(a), it did not state, as Hudson suggests, that recession should be easy or available in every case. On the strength of the pleadings before the Court, Hudson cannot be heard to argue that his mortgage should be unwound based on the alleged miscategorization of a fee for title insurance disclosed to Hudson prior to the consummation of the mortgage.

## IV. CONCLUSION

Since Hudson's pleadings are not legally sufficient to show his entitlement to the relief he seeks, BoA's Motion to Dismiss is GRANTED. In light of Hudson's numerous prior amendments, the Complaint is DISMISSED WITH PREJUDICE.

An appropriate Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 11 day of June 2010